UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| HOLLY M. ROGERS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:20-CV-00618-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| KILOLO KIJAKAZI, ) | **ORDER ON OBJECTIONS TO** |
| Commissioner of Social Security, ) | **MAGISTRATE JUDGE'S REPORT** |
| ) | **AND RECOMMENDATION** |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Holly Rogers filed this action seeking review of the decision by Defendant Commissioner of Social Security to deny Rogers' application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [R. 1]. Rogers submitted her Fact and Law Summary on June 4, 2021, [R. 21], and the Commissioner submitted her Fact and Law Summary on September 7, 2021, [R. 26]. Magistrate Judge Edwards issued a Findings of Fact, Conclusions of Law and Recommendation ("R&R") on January 24, 2022, recommending that the Commissioner's decision be affirmed. [R. 27, p. 15]. On February 1, 2022, Rogers filed her Objection to Report and Recommendation, [R. 28]. The Commissioner filed no response. For the reasons stated below, the Court will adopt Magistrate Judge Edwards' R&R, [R. 27], and overrule Rogers' Objections, [R. 28].

**I.   Background**

Magistrate Judge Edwards' R&R ably sets out the full factual background of this case. [R. 27, pp. 1–4]. Briefly, Rogers originally filed for DIB under Title II and SSI under Title XVI on April 12, 2013, alleging disability beginning on November 2, 2011. [R. 19, p. 87]. Both applications were denied initially and on reconsideration, after which she requested a hearing

before an Administrative Law Judge ("ALJ"). *Id.* ALJ Candance McDaniel held a hearing on October 1, 2015, and subsequently issued an unfavorable decision on January 7, 2016. *Id.* at 87–100. Rogers reapplied for DIB and SSI on March 1, 2017, alleging disability beginning on January 5, 2016. *Id.* at 256, 261–65. Again, both applications were denied initially and on reconsideration, after which she requested a hearing by an ALJ. *Id.* at 132–35, 200–03. ALJ Steven Collins held a hearing on December 20, 2018. *Id.* at 43–83. At the hearing, Rogers amended her alleged onset date from January 5, 2016, to July 1, 2016. *Id.* at 24, 49. On May 6, 2019, ALJ Collins issued an unfavorable decision, finding Rogers not disabled. *Id.* at 24–36.

In reaching his decision, ALJ Collins engaged in the five-step sequential process set forth in the regulations under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)–(e); 20 C.F.R. § 416.920. At step one, ALJ Collins determined that Rogers had not engaged in substantial gainful activity since July 1, 2016, the alleged onset date. [R. 19, p. 26]. At step two, ALJ Collins determined that Rogers has the following severe impairments: degenerative disc disease of the cervical spine; status post fusion; degenerative disc disease of the lumbar spine; affective disorder; anxiety; history of alcohol and drug use; bipolar disorder; obesity; bilateral patellofemoral arthralgia of the knees; and stage III kidney disease and hypertension. *Id.* at 27. At step three, ALJ Collins found that none of Rogers' impairments met or medically equaled the severity of one of the listed impairments. *Id.* At step four, ALJ Collins determined that Rogers had the residual functional capacity ("RFC")[1] to perform sedentary work with the following limitations:

> [E]xcept sitting up to six out of an eight-hour workday and standing and/or walking for at least two hours in an eight-hour workday. She would need an option to sit/stand every 30 minutes where the change would take no more than 1-to-3 minutes without leaving the workstation. She can occasionally climb ramps and

---

[1] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related conditions. 20 C.F.R. § 416.945(a)(1).

stairs, stoop, and crouch. There should be no climbing of ladders, ropes, or scaffolds. There should be no kneeling or crawling. There should be no overhead reaching. There would be no pushing or pulling with the bilateral lower extremities. She would need to avoid concentrated exposure to temperature extremes involving the cold and vibration. She should avoid all exposure to hazards, which includes unprotected heights and exposed moving machinery that cuts or grinds and that fails to stop when contact is lost. She would be able to understand, remember, and carryout simple, routine tasks. She would be able to interact occasionally with supervisors and coworkers, but limited to a job that did not require interaction with the general-public for task completion. The job would not have strict production quotas of fast-paced assembly-line type work. The work cannot require balancing or uneven slippery surfaces. The claimant could use a cane for ambulation.

*Id.* at 28–29. At step five, ALJ Collins determined that considering Rogers' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Rogers can perform, including Office Clerk, Final Assemblers, and Inspectors, Weight Tester. *Id.* at 35. Consequently, ALJ Collins concluded that Rogers was not disabled as defined in the Social Security Act from the alleged onset date through the date of his decision. *Id.* at 36. The Appeals Court denied Rogers' request for review, making ALJ Collins' decision the final decision of the Commissioner. *Id.* at 7. Rogers then filed this action challenging the Commissioner's denial of her benefits. [R. 1]. The Court referred the matter to Magistrate Judge Edwards, who recommended that the Commissioner's decision be affirmed. [R. 27].

II.     **Standard of Review**

When a party objects to a R&R, the Court reviews *de novo* only those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C).  The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Judge Edwards' R&R to which Rogers objects to determine whether relief is warranted.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability, the ALJ conducts a five-step analysis:

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . .

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review

terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of RFC. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008).

### III. Analysis

In her Objection to the R&R, Rogers argues that the Court should not adopt Judge Edwards' analysis for the following two reasons. First, Rogers argues that ALJ Collins improperly applied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and its progeny when determining her RFC. [R. 28, pp. 1–3]. Second, Rogers claims that ALJ Collins' RFC determination is not supported by substantial evidence. *Id.* at 3–5. The Court will address each argument in turn.

#### A. The Application of *Drummond* and Its Progeny

In *Drummond*, the Sixth Circuit held that, "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. In light of the Sixth Circuit's holding, the Social Security Administration explained that it would apply *Drummond* to applications within the geographic territory of the Sixth Circuit as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such finding or there has been a change in the law, regulations or rulings affecting the finding or the method of arriving at the finding.

Acquiescence Ruling ("AR") 98–4(6), 1998 WL 274052 (Soc. Sec. Admin., June 1, 1998).

More recently, the Sixth Circuit reexamined *Drummond*'s holding and reframed the application of res judicata to administrative proceedings. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). Specifically, the Sixth Circuit held that res judicata applies when an individual files a second application for the *same* period of time finally rejected by the first application and no "cognizable explanation" is offered to justify revisiting the first decision. *Id.* at 933 (emphasis added). Res judicata, however, does not apply where a claimant files a subsequent application seeking benefits for a *new* period of time. *Id.* ("When an individual seeks disability benefits for a distinct period of time, each application is entitled to review."). Thus, if a claimant files a second application, alleging a different disability onset date than that in her first application, the second application is entitled to an independent review. *Id.* (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)) ("Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.").

Nonetheless, the Sixth Circuit cautioned that "[f]resh review is not blind review." *Id.* at 934. Consequently, even though an ALJ evaluating a subsequent application may not be bound by a previous ALJ's determination, he may still "consider what [the previous ALJ] did if for no other reason than to strive for consistent decision making." *Id.* As such, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933.

In her objections, Rogers argues that "ALJ Collins did not assess [her] case anew," but simply adopted ALJ McDaniel's RFC as a "mandatory starting point" in contravention of *Earley*. [R. 28, pp. 2–3]. In support of her argument, Rogers cites to *Brecheisen v. Comm'r of Soc. Sec.*,

6

No. 1:20–CV–750, 2021 U.S. Dist. LEXIS 249219 (W.D. Mich. Dec. 21, 2021), *report and recommendation adopted*, No. 1:20–CV–750, 2022 U.S. Dist. LEXIS 2032 (W.D. Mich. Jan. 5, 2022). *Id.* at 3. In *Brecheisen*, the court remanded the case because the second ALJ failed to formulate an RFC in accordance with *Earley*. 2021 U.S. Dist. LEXIS 249219, at *13. Specifically, instead of evaluating the plaintiff's RFC anew, the second ALJ used the previous ALJ's RFC determination as a "mandatory starting point," operating under the mistaken belief that he was "*bound* by" the previous ALJ's RFC absent changed circumstances. *Id.* In other words, the second ALJ did not just consider the previous ALJ's RFC determination, as allowed under *Earley*, but interpreted it as the *required* foundation for his assessment. *See id.* at 12–13; *see also* 893 F.3d at 933. Such mistake prevented a "fresh look" at the plaintiff's case. 2021 U.S. Dist. LEXIS 249219, at *13. Thus, instead of making his own RFC determination, the second ALJ merely reduced the previous ALJ's RFC to accommodate the plaintiff's deteriorated condition. *Id.* The court found this to be reversible error. *Id.*

*Brecheisen*, however, is distinguishable from the case at bar for several reasons. First, ALJ Collins clearly understood that he was not bound by ALJ McDaniel's RFC determination. In fact, he explicitly stated in his opinion that, "Since there has been new and material medical evidence received in connection with the claimant's current application, the undersigned need not adopt the previous findings." [R. 19, p. 29]. Second, based on ALJ Collins' thorough evaluation of Rogers' hearing testimony and medical evidence, it is evident that he gave Rogers' condition a "fresh look." *Brecheisen*, 2021 U.S. Dist. LEXIS 249219, at *13. In particular, ALJ Collins evaluated medical evidence spanning from 2015 to 2018, most of which culminated *after* ALJ McDaniel's decision, which was published in early January 2016. [R. 19, pp. 34, 100]. In such evaluation, ALJ Collins considered the opinion of a variety of medical providers, including

7

State agency medical consultants, and Rogers' latest diagnoses, treatment plans, pain management strategies, medications, MRIs, X-rays, and CT scans. *Id.* at 29–34.

Lastly, the fact that ALJ Collins' RFC finding is nearly identical to ALJ McDaniel's does not show, in and of itself, that ALJ Collins failed to assess Rogers' RFC anew. *See Brecheisen*, 2021 U.S. Dist. LEXIS 249219, at *13 ("The relevant question, however, is *not* whether [the second ALJ's] RFC assessment was more or less restrictive than that articulated by [the first ALJ]. Rather, the relevant question is whether [the second ALJ] gave Plaintiff's application a 'fresh look' or instead considered [the first ALJ's] RFC finding a mandatory starting point.") (emphasis added). ALJ Collins did not merely adopt ALJ McDaniel's RFC finding on res judicata grounds, but instead, only adopted it after undergoing an exhaustive review of the additional medical evidence and opinions in the record. *See* [R. 19, pp. 29–32]. This is most evident by the fact that ALJ Collins only considered ALJ McDaniel's RFC assessment when he weighed the opinion of the State agency medical consultants, who also found that Rogers "could perform work as described in [ALJ McDaniel's] decision." *Id.* at 32. ALJ Collins gave "significant weight" to the State agency medical consultants' opinion because, *after* evaluating the new medical evidence, he concluded that, unlike in *Brecheisen*, "the claimant's impairments have remained largely unchanged." *Id.* Thus, the fact that ALJ Collins only made one minor alteration to ALJ McDaniel's RFC finding (to allow for the use of a cane for ambulation) does not mean that ALJ Collins did not adhere to the proper legal standards in determining Rogers' RFC. *Id.* at 31–32; *see also Scheall v. Comm'r of Soc. Sec.*, No. 1:19–CV–2435, 2020 U.S. Dist. LEXIS 255605, at *37–38 (N.D. Ohio Oct. 1, 2020) (where the court determined that the second ALJ did not err in adopting the prior ALJ's RFC finding because he only did so "after determining the new evidence in the record did not establish a change in [the claimant's]

condition or abilities."). Therefore, the Court will overrule Rogers' objection to the R&R as to this argument.

## B. The RFC Determination & Substantial Evidence

An individual's RFC is the most a claimant can still do despite their physical and mental impairments. 20 C.F.R. § 416.945(a)(1). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The RFC determination is made by an ALJ based upon all the evidence within the record. *Franson v. Comm'r of Soc. Sec.*, 556 F. Supp.2d 716, 731 (W.D. Mich. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). In other words, "[i]n formulating a [RFC], the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012). An ALJ's determination must be supported by substantial evidence. *Fox v. Comm'r of Soc. Sec.*, No. 2:19–cv–0047, 2020 U.S. Dist. LEXIS 69716, at *47–48 (W.D. Mich. Apr. 21, 2020) (citing *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012)). However, an ALJ is not required to provide a written evaluation of every piece of evidence in his opinion; "[r]ather, the ALJ need only say enough to permit an appellate court to 'trace the path' of the reasoning." *Honeycutt v. Saul*, No. 3:18–cv–509–CRS, 2020 U.S. Dist. LEXIS 49164, at *6 (W.D. Ky. Mar. 20, 2020) (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)).

Rogers argues ALJ Collins' RFC determination is not supported by substantial evidence because he relied on and assigned "significant weight" to the 2017 opinions of State agency medical consultants, who, at the time of their evaluation, were "unaware" of medical issues presented in "evidence submitted after the Agency review." [R. 28, p. 4]. In other words, Rogers

contends ALJ Collins' RFC determination is unsupported by the record because it is based, in part, on the opinions of consulting physicians who did not review later-submitted medical records.

The Sixth Circuit recently addressed this particular argument and held that:

> [A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record.

*Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). In *Spicer*, the court determined that the ALJ had satisfied the above standard because he not only "recounted the medical evidence that entered the record after" the examining physician gave his opinion but also "explained why [he] gave greater weight to [the examining physician's] opinion despite it predating the evidence." *Id.* at 494. The same is true here.

Rogers' alleged onset date is July 1, 2016. [R. 19, pp. 24, 49]. The State agency medical physicians' initial review opinions were dated June 12, 2017, and the reconsideration opinions were dated August 11, 2017. *Id.* at 106–73. Upon review of his opinion, it is clear that ALJ Collins considered the medical evidence submitted after the State agency physicians' opinions. With regard to Rogers' neck and back pain, ALJ Collins evaluated medical evidence ranging from 2016 to 2018. *Id.* at 30–31. Specifically, ALJ Collins reviewed Neurosurgeon Reiss's March 2017 medical notes, which stated that though Rogers would need surgery on her lumbar spine, Rogers' MRI of her cervical spine "really looks okay for the most part … There is no compression of the nerves." *Id.* at 30, 383. Dr. Reiss counseled against cervical spine surgery and referred Rogers to Dr. Campbell (at the Leatherman Spine Center), who, in February 2017, found

Rogers to be neurologically intact. *Id.* at 30–31, 383–84, 406. In addition, in late 2016/early 2017 Rogers reported pain relief from aquatic therapy. *Id.* at 444.

ALJ Collins also evaluated the impact of a 2017 motor vehicle accident on Rogers' condition, finding that "it d[id] not appear [to] cause[] a significant change in her physical condition." *Id.* at 31. In reaching this conclusion, ALJ Collins reviewed a CT scan from Norton Hospital Emergency Department, which showed an anterior fusion at C6-7 without complication. *Id.* at 31, 55. The CT scan also showed advanced multilevel changes of degenerative disc disease in Rogers' lumbar spine. *Id.* at 55. However, upon examination in September 2017, despite some tenderness to both the lumbar and cervical spine, Rogers' muscle strength was 5/5 and her gait was normal. *Id.* at 31, 60–61. One month later, in October 2017, Rogers denied physical therapy. *Id.* at 31, 566. In addition, Rogers also declined injections throughout 2017; rather, she received pain relief from Norco, a medication she consistently refilled through 2017. [R. 19, p. 31, 379, 413]. ALJ Collins also reviewed the 2018 medical notes of Dr. Nadar, a pain specialist, who noted that Rogers received pain relief from injections (until she tested positive for THC) and medication, had normal gait, and could heel walk, toe walk, and tandem walk. *Id.* at 31, 1074–76, 1058, 1063, 1066, 1082.

In evaluating Rogers' knee pain, ALJ Collins acknowledged that Rogers' right knee showed degenerative changes most advanced in the patellofemoral joint. *Id.* at 31, 796. In February 2017, Rogers was given a prescription for a cane. *Id.* at 31, 704. However, despite the prescription, ALJ Collins noted that "there is little further reference to" actual use of the cane. *Id.* at 31, 312–14, 326–30, 338–42, 345. In June 2017, Rogers received gel injections in her knee. *Id.* at 31. In addition, Rogers' exams showed that despite mild crepitus and tenderness, Rogers had no gross instability and her patella appeared to track appropriately. *Id.* at 31, 617. ALJ Collins also

considered a 2018 medical note from Rogers' orthopedist, Dr. Griffin, who stated that Rogers "has not made appropriate attempts to help alleviate pain from her knee condition." *Id.* at 31–32, 650.

Despite Rogers' contentions otherwise, ALJ Collins did evaluate medical evidence pertaining to her kidney disease. *Id.* at 32; [R. 28, p. 3]. Specifically, ALJ Collins noted that Rogers is under the supervision of a nephrologist, her condition remains stable, and that though her hypertension requires monitoring, it is controlled with medication. [R. 19, p. 32, 114, 683, 688, 693, 709, 712, 883]. It was only after considering the above evidence that ALJ Collins' assessed the State agency physicians' opinions. *Id.* at 32 ("After reviewing the evidence … the State agency medical consultants found [Rogers] …"). Consequently, it evident that ALJ Collins "recounted the medical evidence that entered the record after" the State agency physicians' opinions. *Spicer*, 651 F. App'x at 494; *see also Marinan v. Kijakzi*, No. 1:20–cv–00172–LLK, 2022 U.S. Dist. LEXIS 29550, *6–8 (W.D. Ky. Feb. 18, 2022) (holding that the ALJ did not "improperly 'play doctor'" because the ALJ evaluated a non-examining physician's opinion and later submitted medical evidence in accordance with *Spicer*).

Lastly, ALJ Collins also "explained why [he] gave greater weight to [the examining physicians'] opinion[s] despite it predating the evidence." *Spicer*, 651 F. App'x at 494. In fact, he gave two reasons. First, ALJ Collins relied on the State agency physicians' opinions because, after reviewing the evidence, he determined that Rogers' other "physicians provided little if any work limitations due to [her] physical impairments." [R. 19, p. 32]. In other words, the State agency physicians' opinions were the only medical opinions in the record that provided ALJ Collins a limitational framework to consider when formulating Rogers' RFC. The fact that the State agency physicians' opinions concluded that Rogers could perform work as described by

ALJ McDaniel does not negate that fact or undermine ALJ Collins' reliance on such opinions. *Id.* Second, ALJ Collins gave the State agency physicians' opinions "significant weight" because, after reviewing the evidence, he found that Rogers' impairments remained largely unchanged since their assessments, and apparently, since ALJ McDaniel's 2016 assessment. *Id.* While these reasons may be insufficient to Rogers, they certainly allow the Court to "trace the path" of ALJ Collins' reasoning and substantiate his ultimate RFC determination. *Stacey*, 451 F. App'x at 519. Thus, the Court finds ALJ Collins' RFC determination to be supported by substantial evidence. Rogers' objection as to this point is overruled.

### IV.   Conclusion

For the above reasons, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Magistrate Judge's Report and Recommendation, **[R. 27]**, is **ADOPTED** to the extent not inconsistent with this opinion.

3. Plaintiff Rogers' Objection, **[R. 28]**, is **OVERRULED**.

4. A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This the 8th day of March, 2022.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY